IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | | |
|---|---|---|
| CHERYL OWENS, | ) | C/A 2:07-3212-JFA-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ACCUSCRIBE TRANSCRIPTION | ) | |
| SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff alleging employment discrimination in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq.; 42 U.S.C. § 1981;

and the South Carolina Human Affairs Law (SCHAL), S.C. Code Ann. §1-13-10 et. seq.

The Defendant filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P., on March 23, 2009. After obtaining an extension of time, Plaintiff filed a

memorandum in opposition to the motion on April 13, 2009, following which the Defendant filed

a reply memorandum on April 23, 2009.

Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



## **Background and Evidence**[2]

Plaintiff, an African American, was hired by the Defendant as a Medical Reports Editor ("MRE") on August 1, 2005. Defendant's Exhibit A. Plaintiff was hired to work the third shift, which was from 11:00 p.m through 7:00 a.m. Her immediate supervisor was Valisa Ferris,[3] the shift supervisor, who is also an African American. Defendant's Exhibit A; Plaintiff's Deposition, pp. 157-158. Plaintiff testified that when she applied for the position she expressed a desire for first shift, but was told that the only positions available were on third shift. Plaintiff's Deposition, pp. 116-117. See also Defendant's Exhibit C (Haddox Affidavit), ¶ 5. However, because of the night work requirement, third shift employees were paid more, $12.00 per hour, instead of the usual $10.00 per hour paid to first and second shift employees. Defendant's Exhibit A; Plaintiff's Deposition, p. 124; Defendant's Exhibit C (Haddox Affidavit), ¶ 6.

Plaintiff testified that African American employees were assigned to the third shift, while white employees got to work the first and second shifts, and that when she mentioned this to Ferris, her reaction was "like, apparently so." Plaintiff's Deposition, p. 250. Plaintiff further testified that third shift workers were required to do transcription work in addition to editing, while the workers on first and second shift were not required to perform this duty.[4] Plaintiff's Deposition, p.

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[3]Ferris also has a discrimination lawsuit pending against this Defendant. Ferris v. Accuscribe Transcription Services, LLC, Civil Action No. 2:07-3281.

[4]While Defendant argues that Plaintiff relies on mere hearsay to support this claim, citing to pp. 222-223 of her deposition, Ferris testified at her deposition that her boss, Monica Haddox, told her that third shift needed to start transcribing reports after Ferris advised Haddox that "there were some periods when the work was slower or slow and so there was really nothing to edit." Ferris further testified however that she did not believe Haddox's request that third shift employees perform
(continued...)



140.

Plaintiff was a probationary employee for the first ninety days of her employment. After completion of her ninety day training period, she was to receive a performance evaluation, and would thereafter receive annual performance evaluations.  Defendant's Exhibit A.  With respect to her editing work, Plaintiff received training for the first three days of her employment, and then began working her regular shift on August 4, 2005.  Plaintiff's Deposition, p. 128.

For the first three weeks of her employment, Plaintiff edited medical reports and sent them to Ferris for any necessary corrections and approval.  After that time, Plaintiff along with her fellow probationary employees were supposed to send their edited reports straight to the Defendant's health care facility clients, without any review by a supervisor.  Plaintiff's Deposition, pp. 162-163. However, Plaintiff was not comfortable sending her work straight to clients after the initial three week period, and Ferris agreed to continue to review her work for an additional week prior to it going straight out to the client.  Plaintiff's Deposition, pp. 162-164; Defendant's Exhibit D.  Nevertheless, Plaintiff testified that she was able to produce an amount of work equivalent to the other new employees on her shift.  Plaintiff's Deposition, pp. 159-160.

The Defendant has presented evidence to dispute Plaintiff's testimony that her work production was equivalent to her peers.  Monica Haddox, Director of Operations for the Defendant, attests that, within a month of beginning employment, an editor with no previous experience is able on average to edit fifty reports per shift, but that the highest level of production Plaintiff was ever able to achieve was twenty-two reports edited in one shift.  Defendant's Exhibit C (Haddox

---

[4](…continued)
some transcription work was unreasonable under the circumstances.  Plaintiff's Exhibit 7 (Ferris Deposition, pp. 60-62).



Affidavit), ¶¶ 8 and 9.    Haddox further attests that Plaintiff's work contained significantly more misspellings and other errors than did the work of the editors who were hired at the same time as or after the Plaintiff.  Id., ¶ 10; see also Defendant's Exhibit G.[5]  In addition to Haddox's affidavit, the Defendant has also provided two exhibits (Defendant's Exhibits E and F) which show the total number of jobs processed for editing for the pay periods August 13 to August 26, 2005 and September 10 through September 23, 2005.  These exhibits reflect that (except for one employee who significantly improved [and surpassed Plaintiff's total] from the first pay period to the second) Plaintiff processed the lowest total of jobs of all of these employees.[6]

        The Defendant has also submitted evidence to show that Plaintiff was consistently tardy to work, for which she received a written warning, and that in addition Plaintiff received a written warning for falsifying her time sheets.  Defendant's Exhibits H and I.  Although Plaintiff signed both of these warnings, she testified at her deposition that she was never late for work, and that she had not falsified her time sheets.  Plaintiff's Deposition, pp. 161, 215.  One of Plaintiff's co-employees, Victoria Strelsky (white), who worked on the third shift with the Plaintiff, attests that after receiving these written warnings on September 23, 2005, Plaintiff "became confrontational and belligerent and made loud, threatening comments that other employees, including me, could hear." Strelsky attests that she felt physically threatened and was afraid to confront Plaintiff about her

---

[5]The Defendant does not collect full payment for reports containing errors.  Defendant's Exhibit C (Haddox Affidavit) ¶ 4.

[6]These exhibits do not indicate if the employees shown are all from third shift, or are from *all* shifts.  Even if these are the employees from all shifts, however, since Plaintiff's fellow third shift employees would be included in these graphs, the exhibits do also reflect that Plaintiff had the lowest number of jobs processed for her own shift as well.



behavior, so she reported Plaintiff's threatening and hostile behavior to the third shift supervisor[7], as well as to Haddox. Defendant's Exhibit J (Strelsky Affidavit), ¶¶ 5-8. See also Defendant's Exhibit C (Haddox Affidavit), ¶¶ 12-13. Plaintiff was thereafter terminated on September 25, 2005.

### Discussion

The Defendant has moved for summary judgment on all of Plaintiff's claims, which are discussed herein, infra. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### Race Discrimination Claim.

Plaintiff first asserts a race discrimination claim for disparate treatment in violation of Title VII and 42 U.S.C. § 1981,[8] based on her assertion that she was subjected to racial discrimination when she was assigned to third shift, was required to perform transcription work,

---

[7]By that time, Ferris had resigned and there was a new supervisor. Strelsky was the lead transcriptionist for the third shift. Defendant's Exhibit J (Strelsky Affidavit), ¶ 2.

[8]To pursue a claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [her] race, and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006). When considering Plaintiff's § 1981 claim, however, it does not matter if she actually had an employment contract or if she was an at-will employee. See Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-1019 (4th Cir. 1999)[holding that even an at-will employment relationship is contractual and may serve as a predicate for a § 1981 claim].



received written warnings for being tardy and falsifying time records, and was terminated. Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[9] Plaintiff has not offered any direct evidence of race discrimination,[10] and Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether any of these alleged actions occurred because of her race under the <u>McDonnell Douglas</u> proof scheme[11] to survive summary judgment. The undersigned is constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in <u>McDonnell Douglas</u>. <u>First</u>, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the

---

[9]The standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. <u>See</u> <u>Ross v. Kansas City Power & Light Co.</u>, 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; <u>Long v. First Union Corp. of Virginia</u>, 894 F.Supp. 933, 945 (E.D.Va. 1995); <u>Kim v. Nash Finch Co.</u>, 123 F.3d 1046, 1063 (8th Cir. 1997).

[10]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 943 (1982).

[11]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Historically, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases, but that is no longer the case. <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <i>cf.</i> <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the <u>McDonnell Douglas</u> analysis. <u>See</u> <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).

6



Defendant unlawfully discriminated against her. <u>Second</u>, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reason for its actions is a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see</u> <u>also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the <u>McDonnell Douglas</u> formula and establish a prima facie case of race discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. <u>See generally</u>, <u>Austen v. HCA Health Services of Virginia, Inc.</u>, No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1383 (4th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 870 (1995). <u>See also</u> <u>Gilbert v. Penn-Wheeling Closure Corp.</u>, 917 F.Supp. 1119 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class (African-American) and suffered an adverse employment action.[12] However, Defendant argues that the

_____

[12]Although it is arguable whether Plaintiff's assignment to third shift, requirement to perform
(continued…)



evidence does not show that Plaintiff was satisfactorily performing her job, or that she received any adverse employment action under circumstances giving rise to an inference of unlawful discrimination.

           **Whether Plaintiff was performing her job satisfactorily.** Defendant offers several arguments for why Plaintiff's job performance was unsatisfactory. First, with regard to the quality of Plaintiff's work, Defendant contends that both the quality and quantity of Plaintiff's work was below her peers with equal or less experience. Haddox attests that because of the nature of the Defendant's business, it is not paid in full if transcription reports contain errors or are not completed on time; <u>see</u> Haddox Affidavit, ¶ 4; and that Plaintiff's work contained significantly more misspellings and other errors than did the work of the MREs who were hired at the same time as or after the Plaintiff. <u>See</u> <u>Haddox Affidavit</u>, ¶ 10. The Defendant also submitted one of Plaintiff's reports, which shows errors. <u>See</u> <u>Defendant's Exhibit G</u>. However, there is no documentary evidence showing how Plaintiff's work compared to that of other employees, so it is difficult to assign weight to this report. Further, Ferris testified that while, at first, Plaintiff's work "wasn't up to par . . ., . . . it started getting better." <u>Ferris Deposition</u>, pp. 140-141. For her part, Petitioner testified that she thought she "did very well" and progressed at the same pace as the other employees; <u>Plaintiff's Deposition</u>, pp. 159-160; and even though Plaintiff acknowledged that she requested that her work continue to be reviewed after the point when it was supposed to have been sent directly to the client, Haddox told her that she had confidence in her and that she was doing a great job. <u>Plaintiff's Deposition</u>, p. 164; <u>see</u> <u>also</u> <u>Defendant's Exhibit D</u>.

---

[12](...continued)
transcription work, and receipt of written warnings constitute adverse employment actions under the applicable caselaw, it is undisputed that her termination was an adverse employment action.



With regard to the quantity of Plaintiff's work, Haddox attests that, within a month of beginning employment, an editor with no previous experience is able on average to edit fifty reports per shift, while the highest level of production that Plaintiff was ever able to achieve was twenty-two reports edited in one shift. Defendant's Exhibit C (Haddox Affidavit), ¶¶ 8 and 9. The Defendant has also provided totals from two pay periods (Defendant's Exhibits E and F) which show that (except for one employee who significantly improved [and surpassed Plaintiff's total] from the first pay period to the second) Plaintiff had the lowest total of jobs processed of all of these employees. However, while these exhibits give credence to Defendant's assertion that Plaintiff was not producing the same number of reports as her peers, these reports do not indicate whether the listed employees are only from the same shift as the Plaintiff. If not, since there is testimony in the record that work for the third shift was slow at times even to the point that there was nothing to do; See Plaintiff's Exhibit 7 (Ferris Deposition, pp. 61-62); these figures would not represent a fair comparison to work being performed on other shifts, and could result in Plaintiff being compared to employees who were not similarly situated.[13] Plaintiff's numbers may also include both transcribed reports and edited reports. Plaintiff's Deposition, p. 185. Although it would be expected that different amounts of time would be expended depending on the task, the Defendant does not show or discuss whether Plaintiff's totals include transcriptions or whether the other employees' totals also include both transcribed and edited reports. These questions make it difficult to use this data to compare Plaintiff's quantity of work to her comparable peers.

In any event, although Plaintiff was given written warnings regarding her tardiness

---

[13]Notwithstanding these questions, Plaintiff has not disputed the totals in these exhibits which reflect that Plaintiff was the next to lowest performer on Exhibit E and the lowest performer on Exhibit F.



and time records, the Defendant has submitted no evidence to show that she was given any written warnings concerning either the quality and/or quantity of her work. Further, at the time of her termination, when Plaintiff was told why she was being terminated, her performance was not mentioned. <u>Plaintiff's Deposition</u>, p. 247. Therefore, viewing the evidence in the light most favorable to the Plaintiff, the undersigned does not find that the Defendant has established that Plaintiff was performing her job unsatisfactorily based upon the quantity and quality of her work, at least for purposes of summary judgment.

Defendant also contends that Plaintiff was not performing satisfactorily because she was tardy to work and falsified her time records. The record reflects that Plaintiff was given written warnings for both of these infractions, and these grounds were also discussed with Plaintiff at the time of her termination. <u>Plaintiff's Deposition</u>, p. 247; <u>see</u> <u>also</u> <u>Defendant's Exhibits H & I</u>. However, Sandy Hill, the Defendant's Human Resource Representative, testified before the South Carolina Employment Security Commission that the Defendant used Plaintiff's log in time on her computer to determine her start time for work. <u>See</u> <u>Plaintiff's Exhibit 4</u>, pp. 18-19. Plaintiff and other employees were not told this method was being used to track employee attendance, and Plaintiff argues that, since she worked third shift, the doors to the building were locked and had to be opened by either another employee who was leaving, or Plaintiff had to call someone upstairs and wait for them to come and open the door, which would result in delays in her log in time. <u>See</u> <u>Plaintiff's Exhibit 4</u>, pp. 43-44. Hill confirmed that the doors to enter the building are locked and an employee would have to call to gain access if they were early or late (unless they were trying to enter when an employee from the earlier shift was leaving); <u>See</u> <u>Plaintiff's Exhibit 4</u>, p. 23; and Plaintiff testified that she had to wait outside for employees to come downstairs to let her in on several occasions. <u>See</u> <u>Plaintiff's Exhibit 4</u>, pp. 43-44. Additionally, once Plaintiff was inside and



at her work station, she had to wait on the employee from the previous shift (who was assigned to the same computer) to finish their work and sign off before she could sign on; see Plaintiff's Exhibit 4, pp. 52-53; and Hill confirmed that if an employee from the next shift was working on the same computer as one from an earlier shift, they would have to wait for the prior shift employee to sign off before being able to sign on. See Plaintiff's Exhibit 4, pp. 25-26. Plaintiff also testified that she (and other new employees) did not have an ID to log in, so they had to wait to be logged in by a supervisor; see Plaintiff's Exhibit 4, pp. 58, 67; see also Plaintiff's Deposition, p. 251; with Plaintiff's log in time then being subject to her supervisor's availability vis a vis other employees' log in needs. Plaintiff's Deposition, p. 245. This evidence creates an issue of fact as to whether Plaintiff actually arrived late on all of the occasions claimed by the Defendant.

Further, while the Defendant issued Plaintiff written warnings for being late on August 26, 2005, with consecutive nights through September 19, 2005; see Defendant's Exhibit H; Plaintiff argues that her cell phone records prove that she was not late on numerous occasions during this time period, as they show her dialing the Defendant's number to gain entrance to the building prior to her scheduled start time at 11:00 p.m. Plaintiff's Deposition, p. 240. Plaintiff has provided copies of her cell phone records, and although these records do not reflect calls every night, they do show that Plaintiff called the Defendant's number on August 26th at 10:37 p.m.,[14] August 29th at 10:30 p.m., September 1st at 10:33 p.m., and September 2nd at 10:32 p.m. See Plaintiff's Exhibit 5

---

[14]Using this date as an example, Plaintiff's cell phone records show a phone call to the Defendant on August 26th at 10:37 p.m., with Plaintiff arguing that she was calling to gain entrance into the building. See Plaintiff's Exhibit 4, p. 44; see also Plaintiff's Exhibit 5. Hill testified that the supervisor called the Defendant's office four times on August 26 (inadvertently referred to as October 26 - Plaintiff was no longer employed by the Defendant on October 26) with the last phone call at 11:12 p.m. and was told that Plaintiff had not arrived yet. See Plaintiff's Exhibit 4, pp. 27-28. Hill testified that the supervisor reported that Plaintiff logged in right before 11:30 p.m. See Plaintiff's Exhibit 4, p. 28.



(Plaintiff's Cell Phone records attached to S.C. Employment Security Commission). All of these dates are included in the time frame Defendant contends Plaintiff was tardy, and while the Defendant does not concede that these calls were made in order for Plaintiff to gain access to the building, it has admitted that the doors were locked and has not argued that these calls were made for any other purpose. See Plaintiff's Exhibit 4, p. 23.

In any event, Plaintiff testified that she was never late for work. See Plaintiff's Exhibit 4, p. 43. Plaintiff's supervisor, Ferris, also testified that Plaintiff was never late and was always there before everyone else as far as she could recall. Ferris Deposition, p. 140. Plaintiff has also submitted testimony from Lasonya Morris, a former employee of the Defendant, who testified that Plaintiff was always at work prior to her and was never late. See Plaintiff's Exhibit 4, pp. 65-66, 68. Therefore, viewing the evidence of Plaintiff's alleged tardiness in the light most favorable to the Plaintiff, the undersigned again finds that a sufficient question of fact has been established to avoid summary judgment.

With regard to Plaintiff allegedly falsifying her time records, Hill testified that the Defendant did not have any policies governing employees' attendance, but was in the process of creating one. See Plaintiff's Exhibit 4 (Record, p. 17). Hill also testified that there were no time clocks, so in order to determine if time records were falsified, the time when an employee logged in to their computer was compared to the time that the employee put on their time sheets. Id. at p. 18. Plaintiff's written warning indicated that she had listed an earlier start time on her time cards consistently from August 26, 2005, through September 19, 2005 than her computer log in times showed. See Defendant's Exhibit I. Plaintiff testified she was told that she was being fired because she had falsified her time sheet, saying that she was at work at 11:00 p.m. when she did not arrive until 11:07 p.m. See Plaintiff's Deposition, p. 247. However, there is no evidence that the Plaintiff



or any other employee was told that their start time for work was based on when they logged onto their computer and that hours should be recorded based on that time; Id. at pp. 22-23; and based on the discussion above outlining the potential for discrepancies between the time of Plaintiff's arrival and the time that she logged on to her computer, and the Defendant's awareness of such discrepancies, the undersigned does not find that the evidence (considered in the light most favorable to the Plaintiff) establishes that she was not performing satisfactorily based on this allegation. Therefore, for purposes of summary judgment, Plaintiff has established the second prong of her prima facie case. Muhammad v. Klotz, 36 F.Supp. 2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-252 (1986).

**Whether there is evidence that other employees who were not members of Plaintiff's protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination.** With respect to the fourth prong of her prima facie case, Plaintiff argues an inference of unlawful discrimination based on her claim that only African Americans were placed on third shift, that they were required to perform transcription services, and because she was improperly disciplined for being late and accused of submitting false time records. However, after careful review and consideration of the evidence and arguments submitted, the undersigned does not find that Plaintiff has submitted sufficient facts to establish a genuine issue of fact with respect to this prong of her prima facie case. The Defendant is therefore entitled to summary judgment on this claim.

Plaintiff testified that she was assigned to third shift, where a disproportionate number



of the African American employees were placed, even though she wanted to work on a different shift. Plaintiff's Deposition, pp. 234, 250. However, Haddox attests that Plaintiff was hired at a job fair where the Defendant was only seeking third shift employees. Defendant's Exhibit C (Haddox Affidavit), ¶ 5.; see also Plaintiff's Deposition, pp. 117-118. Although Haddox does not state the date for this job fair, Plaintiff's new employee form references her resume source as "job fair 7/19/05". See Defendant's Exhibit M. Plaintiff has provided a chart from the Defendant that lists employees and their dates of hire, and there are no white employees listed as having been hired for first or second shift for the period of time after Plaintiff submitted her application at the job fair (only three other employees were hired around the same time as the Plaintiff: Kelly, Morris, and Singleton, all of whom are African American). See Plaintiff's Exhibit 2. Significantly, Plaintiff has also provided no evidence to show that there was an opening on another shift at the time that she was hired. Plaintiff's Deposition, p. 118. Accordingly, Plaintiff has failed to produce any evidence to show that her placement on third shift at the time of her hiring was based on her race.

With respect to Plaintiff being able to obtain work on a different shift following her hire, Haddox attests that only one open position became available on a different shift during Plaintiff's brief period of employment, and that none of the third shift employees applied for the position. See Defendant's Exhibit C (Haddox Affidavit), ¶ 15. Plaintiff testified that when a position on first shift became available during her employment, she and other African American employees on third shift requested it. Plaintiff's Deposition, p. 235. However, Plaintiff has provided no documentary evidence to show that she applied for this job, and while the evidence reflects that Plaintiff did express an interest in being on first shift to Ferris, Ferris testified that she never told Haddox of Plaintiff's interest (or indeed of anyone else's interest) in changing shifts. Ferris Deposition, pp. 102-103. Additionally, the record reflects that Michelle DuBois, a white employee who worked at home on



third shift, was the employee who filled the position. Plaintiff conceded that DuBois had been transcribing for around five years, was an experienced transcriptionist, and that she even liked to edit DuBois' reports because of the quality of her work. <u>Plaintiff's Deposition</u>, pp. 235-236. Based on this testimony, even if the Court were to assume for purposes of summary judgment that Plaintiff applied for this position, she has not shown that the decision to give the position to DuBois rather than to Plaintiff, who was still a new probationary employee, gives rise to an inference of racial discrimination.

Turning to Plaintiff's allegation that third shift employees (primarily but not all African Americans) were required to transcribe while the other shifts were not, Plaintiff testified that when an employee from second shift was filling in for her supervisor, she told Plaintiff that second shift employees were not required to transcribe, only edit. Plaintiff also testified that she [Plaintiff] had expressed concerns about transcribing because she did not have any experience. <u>Plaintiff's Deposition</u>, pp. 136-138; 222-223. However, while Ferris also testified that the other shifts were not required to transcribe; <u>Ferris Deposition</u>, p. 61; Hill testified that other shifts *were* required to do transcription work. <u>See</u> <u>Plaintiff's Exhibit 4</u>, p. 22. In any event, even assuming for purposes of summary judgment that other shifts were not required to perform this work, the undisputed version of how the third shift began performing transcription work does not reflect that the decision had anything to do with race. Rather, the record shows that Ferris, Plaintiff's supervisor who is also an African American and has her own law suit pending against the Defendant, told Haddox that third shift was slow and that they did not have anything to do. <u>See</u> <u>Plaintiff's Exhibit 7</u> (<u>Ferris Deposition</u>, pp. 61-62). Ferris further testified that she did not believe Haddox's request that third shift perform transcription work during these slow work hours was unreasonable under the circumstances. <u>See</u>



Plaintiff's Exhibit 7 (Ferris Deposition, pp. 60-62).[15]  Accordingly, the evidence before the Court does not give rise to an inference that this alleged difference in responsibilities was based on race.[16]

Finally with respect to Plaintiff's argument that her written discipline and termination give rise to an inference of race discrimination, Plaintiff testified that there were several occasions when employees working first shift were late and they were still working for the Defendant. Plaintiff's Deposition, pp. 251, 253.  However, Plaintiff conceded at her deposition that she did not know whether or not other employees were written up for being tardy or received any other kind of discipline; Plaintiff's Deposition, p. 244; and she has provided no evidence such as names, dates, or records from employee files (or deposition testimony) to show that any other employees did not receive written warnings for their alleged infractions, if any.  While Plaintiff alleges that Strelsky also discussed disciplinary actions taken against another employee and was not disciplined for her conduct, she has pointed to no evidence (other than her own speculation) to show that Strelsky was not disciplined for this alleged infraction, assuming it occurred.  Indeed, Plaintiff does not identify a

_____

[15]Although Plaintiff may argue that first shift may also have not had sufficient work activity at certain times, Plaintiff has presented no evidence to show that Haddox was aware of any such problem.  This allegation is apparently based on Ferris' knowledge of the work being left by third shift for first shift, which could affect the work load at the beginning of first shift.  Ferris Deposition, p. 68.  However, there is not sufficient evidence in the record to compare the work loads between the shifts.  Furthermore, Hill testified that other shifts were also required to do transcription work, and Ferris testified that she never complained to Haddox about third shift having to do transcription work while other shifts did not.  Ferris Deposition, pp. 72-73.  Plaintiff's Exhibit 4, p. 22.  Likewise, there is no evidence Plaintiff complained to Haddox about other shifts allegedly not being required to transcribe.  This speculative assertion does not constitute evidence of race discrimination.

[16]Also of note is Plaintiff's testimony that she had "heard" that the employees on first and second shift were paid more than she was - however, she conceded that she had no documented proof.  Plaintiff's Deposition, p. 220.  Plaintiff has also submitted a chart showing the hourly rates of employees, which does not support any contention regarding a pay differential based on race.  See Plaintiff's Exhibit 2; see also Defendant's Exhibit A; Defendant's Exhibit C (Haddox Affidavit), ¶ 6.  Therefore, to the extent Plaintiff has intended to included this issue as a purported claim for discrimination, it is without merit.

16



supervisor who was even aware that this purported conduct occurred. <u>Plaintiff's Deposition</u>, pp. 250, 254. Furthermore, Plaintiff was herself not initially terminated for these violations; rather, she received two written warnings. It was only after the alleged disturbance caused by the Plaintiff which followed her receipt of those written warnings and Plaintiff's improper discussion of them with other employees that she was terminated. Plaintiff does not dispute that she discussed her disciplinary warnings with other employees (which she acknowledges were supposed to be confidential - <u>see</u> <u>Plaintiff's Deposition</u>, pp. 214-216, 253), nor has she presented any evidence to show that she did not then cause a disturbance in her workplace which was reported to management.

In sum, there is no evidence to show a racial motivation in Plaintiff's discipline and termination. Plaintiff's general, conclusory and unsubstantiated testimony is not by itself sufficient to give rise to an inference of discrimination, particularly in light of the fact that Plaintiff has presented no evidence to show that either of the individuals involved the employment decisions at issue (Haddox and Beth Poling) had ever made any racial statements, had engaged in any racially classified conduct, or had ever exhibited any overtly racial animus towards the Plaintiff or anyone else. <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]; <i>cf.</i> <u>Cook v. CSK Transp.</u> <u>Corp.</u>, 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of race discrimination...."]; <u>Boden v. U.S. Amada Ltd.</u>, 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]. In order to proceed on this claim, Plaintiff must present evidence to show that her treatment was based on race discrimination, not because the Defendant made a mistake (assuming the evidence showed any such mistake), treated her unfairly, or was simply incorrect in its findings or decisions concerning



Plaintiff's employment.  <u>Jamil v. Secretary Dep't of Defense</u>, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); <u>Holder v. Raleigh</u>, 867 F.2d 823, 828 (4th Cir. 1989); <u>Crowley v. Prince George's County</u>, 890 F.2d 683, 687 (4th Cir. 1989), <u>cert. denied</u>, 111 S.Ct. 101 (1992); <u>McCollum v. Bolger</u>, 794 F.2d 602, 610 (11th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1034 (1987); <u>see generally</u> <u>Moore v. Sears, Roebuck & Co.</u>, 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); <u>Jones v. Orleans Parish School Board</u>, 679 F.2d 32, 38 (5th Cir. 1982), <u>cert. denied</u>, 461 U.S. 951 (1983); <u>North Carolina Dep't of Corrections v. Gibson</u>, 301 S.E.2d 78, 85 (N.C. 1983);  <u>Sullivan v. River Valley School District</u>, 197 F.3d 804, 815 (6th Cir. 1999), <u>cert. denied</u>, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]; <u>Kariotis v. Navistar Intern. Transp. Corp.</u>, 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.  Thus when an employee is discharged because of  an employer's honest mistake, federal anti-discrimination laws offer no protection."]; <u>see</u> <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998).  <i>Cf.</i> <u>Rudolph v. Hechinger</u>, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing <u>Turner v. Texas Instruments, Inc.</u>, 555 F.2d 1251, 1257 (5th Cir. 1977).

Plaintiff has failed to present any such evidence, and she has therefore failed to establish the fourth and final prong of her prima facie case.

**Pretext**.  Finally, even if the Court were to find that Plaintiff had presented sufficient evidence to establish her prima facie case, the Defendant's evidence satisfies its burden of showing a legitimate, non-discriminatory reason for its employment decision(s), and Plaintiff has failed to present any evidence of pretext.  <u>See</u> <u>Causey v. Balog</u>, 162 F.3d 795, 801-802 (4th Cir. 1998)



[affirming summary judgment where employee failed to show that his employer's alleged mistreatment was based on his race]. The evidence shows that, at the time Plaintiff was hired, the Defendant was only hiring for the third shift. Thereafter, only one opening occurred on a different shift during Plaintiff's period of employment, and Plaintiff has presented no evidence to show that she informed Haddox of her desire for a transfer, or that the employee who received the transfer was not well qualified. As for third shift performing transcription work, even Plaintiff's African American supervisor thought this to be appropriate. While Plaintiff uses her cell phone records to support her claim that she reported to work timely on several occasions, these records do not cover all of the time Defendant alleges she was late. Further, even if Plaintiff is correct that she actually arrived at work on time, it is undisputed in the evidence that Plaintiff routinely logged in to her computer after her scheduled start time, which was how the Defendant was tracking employee work time. Plaintiff also does not dispute that she discussed the written warnings she received with her co-workers in violation of company policy, and that she became so upset at work after receiving the written warnings that the lead transcriptionist felt threatened to the point she felt compelled to call her supervisor at home about Plaintiff's conduct. See Defendant's Exhibit C (Haddox Affidavit), ¶¶ 8-9, 11-13; Defendant's Exhibits F & G. Whether Plaintiff believes these actions then justified her being terminated or not, she has offered no evidence to show a racial motivation in this decision, nor has she presented any evidence to support a claim that she was the subject of race discrimination when compared to the treatment given to white employees.

Finally, the short time period between her hiring and firing also undercuts Plaintiff's claim of discrimination. "With respect to proving whether the plaintiff has been the victim of invidious discrimination under the McDonnell Douglas paradignm, we have opined that if: the employee was hired and fired by the same person within a relatively short time span . . . this fact



creates a strong inference that the employer's stated reason for acting against the employee is not pretextual . . . In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firings." Jeter v. SMI-Owen Steel Co., Inc., No. 95-0001, 1996 WL 906531 at *4 (D.S.C. Sept. 30, 1996)(citing Proud v. Stone, 945 F.2d 7956, 798 (4th Cir. 1991)). While, based on the record before the Court, it is not clear who hired the Plaintiff, Haddox was director of operations, and Plaintiff concedes that the Defendant was aware of her race at the time of her application (which she contends supports her argument that she was placed on third shift because of her race).[17] See Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir.) ["[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual [adverse employment actions".], cert. denied, 516 U.S. 944 (1995)]; Buhrmaster v. Overnight Transp. 61 F.3d 461, 464 (6th Cir. 1995) ["[A]n individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."], cert. denied, 516 U.S. 1078 (1996). Plaintiff's own conclusory opinion and belief that she was the victim of discrimination, no matter how heartfelt, is simply not sufficient absent any supporting evidence to establish a case of discrimination or to survive summary judgment. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; Causey, 162 F.3d at 802 [conclusory statements without evidentiary support insufficient to create genuine issue of fact]; Glover v. Lockheed Corp., 772 F.Supp. 898, 901 (D.S.C. 1991)

---

[17]The only employment application from the Defendant which has been submitted by the parties is for Candice Manigault, who also had a pending discrimination suit against the Defendant. See Plaintiff's Exhibit 1. Manigault was hired shortly prior to the Plaintiff, and her application includes a section with voluntary affirmative action information which includes a space to indicate the applicant's race. Id.



[summary judgment granted where Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact as to whether he was discriminated against]; <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."].

Therefore, Plaintiff's disparate treatment race discrimination claim should be dismissed.

## II.

### Hostile Work Environment Claim.

Plaintiff also complains in her Complaint that she was subject to harassment during the time of her employment with the Defendant, creating a hostile work environment. To establish a hostile work environment claim, Plaintiff must present evidence to prove the following elements: 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her race; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct is imputable on some factual basis to her employer. <u>Ocheltree v. Scollon Productions, Inc.</u>, 308 F.3d 351, 356 (4th Cir. 2002), <u>rehearing en banc</u>, 335 F.3d 325 (4th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1406 (2004); <u>Spicer v. Com.of Va. Dep't of Corrections</u>, 66 F.3d 705, 710 (4th Cir. 1995); <u>Brown v. Perry</u>, 184 F.3d 388, 393 (4th Cir. 1999).

Defendant initially argues that this claim should be dismissed because Plaintiff bases her harassment claim on the same evidence she offered to support her race discrimination claim. <u>See Plaintiff's Deposition</u>, pp. 234, 240, 250-251, 252-255. Plaintiff does not deny this assertion, but contends that she is also entitled to seek relief for this alleged conduct as both a disparate treatment



claim and a harassment claim, and the undersigned agrees.  See <u>Bragg v. Office of Dist. Atty.,</u>

<u>Thirteenth Judicial District</u>, No. 07-324, 2009 WL 2151333 at * 25 (D.Colo. July 16, 2007)[Plaintiff

can pursue separate discrimination and harassment claims even though they are essentially based on

same conduct]. Nevertheless, the evidence presented to this Court is not sufficient to create a genuine

issue of fact as to whether the conduct complained of was based on Plaintiff's race or was severe or

pervasive enough to alter Plaintiff's condition of employment and to create an abusive work

environment.  Therefore, this claim should be dismissed.

        Plaintiff argues in her brief that

> she was subjected to continuous harassment in retaliation[18] for reporting the
> discriminatory actions.  Plaintiff reported the inappropriate actions to her employer,
> and was written up and accused of violations that did either not occur or similar
> situated Caucasian employees were not disciplined for.  Plaintiff was forced to
> continue to work in the hostile work environment until she was wrongfully terminated
> from her position.

<u>See</u> Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 13-14.  Although not

mentioned by the Plaintiff in this narrative, to the extent Plaintiff contends that her placement on third

shift or being required to transcribe supports her claim, the undersigned has already found that this

conduct was not based on her race.  <u>See</u> discussion, <u>supra</u>.  As for the written warnings Plaintiff

received for being tardy and falsifying time records, in addition to there being no evidence that

Plaintiff's race played a role in these warnings being issued, Plaintiff did not even receive these

written warnings until September 23, 2005, at the end of her shift, when Beth Poling, Plaintiff's [then]

supervisor, and Haddox met privately with Plaintiff and gave her the two written warnings.  <u>See</u>

<u>Defendant's Exhibits H & I</u>; <u>Plaintiff's Deposition</u>, pp. 161-162, 190.  Prior to this time, Plaintiff

---

[18]Plaintiff has also asserted a separate retaliation claim, which is discussed in Section III,
<u>infra</u>.



testified that she was not even aware of these allegations. Plaintiff was then terminated the next day.[19]
See South Carolina Employment Commission Record, p. 32. Hence, this conduct, occurring essentially over the course of only two days, is simply insufficient to meet the standard of severe and pervasive conduct sufficient to create a hostile work environment under the applicable caselaw. See Harrington v. Disney Reg'l Entm't, Inc., No. 06-12226, 2007 WL 3036873 at * 12 (11th Cir. Oct. 19, 2007)[finding no hostile environment when an employer allegedly subjected the employee to unfair discipline]; Naughton v. Sears, Roebuck & Co., No. 02-4761, 2003 WL 360085 at *5 n. 1 (N.D.Ill. 2003)[criticism, including a negative performance review, does not constitute an adverse employment action]; cf. Cram v. Lamson & Sessions, 49 F.3d 466, 474 (8th Cir. 1995) [sporadic or casual comments are unlikely to support a hostile work environment claim]; Jenkins v. New York State Dep't of Corrections, No. 01-754, 2002 WL 205674 at *6-7 (S.D.N.Y. Feb. 8, 2002) [finding that one-time occurrence of verbal harassment and shove that was devoid of any indicia of race based motive may have caused anxiety or embarrassment, but it did not prevent plaintiff from doing his job and was not an adverse employment action];

Otherwise, Plaintiff just generally states that she was the subject of continuous harassment, but does not provide any specifics. Plaintiff's Brief, at p. 13. Such general and conclusory statements do not constitute "evidence" for purposes of defeating a summary judgment motion. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993). See Causey, 162 F.3d at 802 [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote

---

[19]Plaintiff's termination date is listed as September 25, 2005 because, although she reported for work on September 24, 2005, she was not terminated until after midnight . See South Carolina Employment Commission Record, p. 34.

23



inferences and conclusory allegations cannot defeat summary judgment]; <u>Godoy v. Habersham County</u>, No. 04-211, 2006 WL 739369 at *11 (N.D.Ga. Mar. 21, 2006).  Plaintiff's hostile work environment claim should therefore be dismissed.

### III.

### Retaliation Claim.

Plaintiff also asserts in her Complaint that she was wrongly terminated as a result of having participated in activities protected  under Title VII.  Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims.  <u>Ross v. Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir. 1985) <u>overruled on other grounds</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989); <u>see also</u> <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989).  "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence.  Such a prima facie case consists of three elements:  (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action."  <u>Id.</u>; <u>Munday  v. Waste Management of North America, Inc.</u>, 126 F.3d 239, 242 (4th Cir. 1997).  Once a prima facie case has been presented, the



Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

**Prima facie case**. Defendant asserts that is it entitled to dismissal of this claim because Plaintiff has failed to show that she engaged in any protected activity. Plaintiff contends that she engaged in protected activity by reporting or complaining about allegedly discriminatory conduct to various individuals. Plaintiff's Deposition, pp. 136-138, 253, 275-276. However, with regard to Plaintiff's claim that she complained to Poling about third shift being required to transcribe [Plaintiff's Deposition, pp. 136-138], Defendant argues that there is no evidence that Plaintiff's complaints to Poling were based on race, and Plaintiff has not in response directed the Court's attention to any evidence to show that her complaint to Poling about third shift being required to perform transcription services was based on an allegation of race discrimination.[20] Plaintiff's Deposition, pp. 136-139. Further, Plaintiff testified that she told Poling about her concern about transcribing at the end of the shift on the first day that Ferris informed Plaintiff that she would need to start transcribing. Id. However, Plaintiff later testified that her discovery that other shifts were not required to transcribe, which was what made her believe that this requirement was based on race, did not occur until after this time. Plaintiff's Deposition, pp. 222-223. This conflicting testimony does not constitute evidence to support Plaintiff's claim that her discussions with Poling were

---

[20]Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's arguments on summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.1994), cert. denied,513 U.S. 871 (1994); Malina v. Baltimore Gas & Elec., 18 F.Supp.2d 596, 604 (D.Md.1998); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir.1993), cert. denied sub nom, Price v. City of Charlotte, 420 U.S. 1116 (1997). Notwithstanding this rule, however, when reviewing the record for preparation of this opinion the undersigned did not locate any evidence showing that Plaintiff told Poling that her complaints regarding the transcription requirement were based on race.



protected activity.

As for Plaintiff's testimony that she complained to "Cathy", a second shift employee who was filling in for Ferris, about third shift being required to transcribe when the other shifts were not and that she thought it was discriminatory; <u>Plaintiff's Deposition</u>, pp. 223, 275; while this would constitute protected activity, Defendant argues that Cathy was a co-worker, and that there is no evidence that Cathy ever shared Plaintiff's complaints with either Poling or Haddox or anyone else in the Defendant's management. <u>Jackson v. United Parcel Service</u>, 548 F.3d 1137, 1143 (8th Cir. 2008)(quoting <u>Wolff v. Berkley, Inc.</u>, 938 F.2d 100, 103 (8th Cir. 1991)["[A] causal link does not exist if the employer is not aware of the employee's statutorily protected activity."]). Plaintiff has provided no evidence to show that Cathy was anything other than a co-employee, or that even if she was temporarily acting as third shift supervisor in Ferris' absence, she passed on Plaintiff's concerns to anyone in management.

Plaintiff also testified that she complained to Ferris about African Americans all being on third shift and about third shift being required to transcribe based on allegations of discrimination. <u>Plaintiff's Deposition</u>, pp. 250, 275-276. However, even assuming that Plaintiff engaged in protected activity based on her complaints to Ferris and that her termination was an adverse employment action, Plaintiff has again failed to present any evidence to show a casual connection between these events to meet the third prong of her prima facie case. Although the timing of Plaintiff's complaint at the end of August and her firing on September 25, 2009, could be used as circumstantial evidence to establish a causal connection; <u>see</u> <u>Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago</u>, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; <u>Pantoja v. American NTN Bearing Mfg. Corp.</u>, 495 F.3d 840, 850 (7th Cir. 2007) [Timing was "suspicious enough to suffice

26



to support [ ] prima facie case."]; <u>Texas Dep't of Community Affairs</u>, 450 U.S. 253 (1981)[the burden of establishing a prima facie case is not onerous]; as was the case with Cathy, Plaintiff has presented no evidence to show that Ferris reported Plaintiff's complaints to Haddox or that either of the decisionmakers in Plaintiff's discipline and termination (Haddox and Poling) were aware of this protected activity. Ferris testified that she did not recall ever having spoken to either Haddox or Poling about Plaintiff's complaint regarding third shift employees being required to transcribe; <u>Ferris Deposition</u>, pp. 71-72; and there is no other evidence that the decisionmakers here were ever aware of Plaintiff's conversation with Cathy, Ferris or anyone else. <u>Luna v. Lockheed Martin Corp.</u>, 54 Fed.Appx. 404 at * 1(5th Cir. Oct. 22, 2002)["If the decision maker was not aware of any protected activity, there can be no causal connection between the protected activity and any adverse employment decision take by that decision maker."]; <u>Jackson</u>, 545 F.3d at 1143; <u>Cecilino v. Allstate Ins. Co.</u>, 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.'].

   **Legitimate, non-discriminatory reason**. Further, even assuming for purposes of summary judgment that Plaintiff had established her prima-facie case of retaliation, the Defendant has set forth legitimate, non-discriminatory reasons for the actions taken. The evidence reflects that Plaintiff routinely logged in to her computer after her scheduled start time, that she received written disciplinary warnings based on her alleged tardiness and time sheet discrepancies on or about September 23, 2005, and that after Plaintiff received these written warnings she improperly discussed them with other employees and became confrontational and belligerent and made loud and threatening comments that other employees could hear and that were sufficient to frighten Strelsky. See <u>Strelsky Affidavit</u>, ¶ ¶ 5-6. Because of Plaintiff's behavior, Strelsky felt physically threatened



and reported Plaintiff's hostile behavior to Poling and Haddox.  See <u>Strelsky Affidavit</u>, ¶ ¶ 6-7;

<u>Haddox Affidavit</u>, ¶ 13.  Haddox and Poling then terminated the Plaintiff on the following work day.

This evidence is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's

actions, and Plaintiff must therefore present evidence of pretext in the making of these decisions in

order to avoid summary judgment.  <u>See</u> <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 941 (4th Cir. 1991)

[The Defendant's burden is only one of production, not of persuasion].

   **Pretext**.  In order to show pretext, Plaintiff must show that "but for" the Defendant's

intent to retaliate against her for having engaged in protected activity, she would not have been

subjected to the employment actions at issue.  <u>EEOC</u>, 955 F.2d at 941; <u>Conkwright v. Westinghouse</u>

<u>Elec. Corp.</u>, 933 F.2d 231, 234 (4th Cir. 1991).  "Direct or indirect evidence of discriminatory motive

may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the

employer's decision was motivated by [retaliatory animus].'" <u>LeBlanc v. Great American Insurance</u>

<u>Co.</u>, 6 F.3d 836, 843 (1st Cir. 1993)(citing <u>Goldman v. First Nat'l Bank</u>, 985 F.2d 1113, 1117 (1st

Cir. 1993)(quoting <u>Connell v. Bank of Boston</u>, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), <u>cert.</u>

<u>denied</u>, 111 S.Ct. 2828 (1991)); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141-

143 (2000).  Plaintiff has failed to present any such evidence.  Plaintiff has presented no evidence

to show that the Defendant did not use log in times to assess employee work hours, to show that

white employees were not disciplined for this type of discrepancy or for discussing personnel matters

(other than her own unsubstantiated speculation), or to dispute that she engaged in belligerent or

unprofessional conduct in the work place just prior to her termination.  Furthermore, Plaintiff has

failed to present any evidence to show that the decision makers in this case were even aware of her

complaints regarding discrimination.  <u>Jackson,</u> 548 F.3d at 1143;  <u>Wolff</u>, 938 F.2d at 103; <u>Luna</u>, 54

Fed.Appx. at * 1; <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th

28



Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"].

While Plaintiff may (and indeed does) disagree with the personnel actions taken and with the conclusions reached in her administrative proceedings, in order to succeed on her retaliation claim, Plaintiff's evidence must show that the reason she was disciplined or terminated was because she complained about race discrimination, not because the Defendant made a mistake, was incorrect in its findings concerning Plaintiff's employment, or even that her supervisor just did not like her. Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]; Kariotis., 131 F.3d at 680 ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; cf. Rudolph, 884 F.Supp. At 188 ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner, 555 F.2d at 1257. Plaintiff's argument is essentially that, because these employment actions and decisions occurred during a period of time shortly after she complained about being on third shift and about having to transcribe, the Defendant's actions constituted unlawful retaliation. That is simply not the standard for a Title VII retaliation claim, for if it were, then any employee who engaged in protected activity would thereafter be shielded from normal workplace discipline. Plaintiff is not guaranteed a work environment free of stress, dissatisfaction with work assignments, or difficult or unpleasant working conditions, just because she engaged in protected activity; Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994); and the mere fact that Plaintiff engaged in protected activity does not immunize her from actions by her employer which may otherwise be justified by her work record or performance.



29

<u>Ross</u>, 759 F.2d at 366 ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."]; <u>Bodoy v. North Arundel Hospital</u>, 945 F.Supp. 890, 898 (D.Md. 1996).

While Plaintiff obviously believes she was dealt with unfairly, and indeed the undersigned makes no finding as to whether the discipline meted out to her was appropriate, Plaintiff has simply provided no evidence to support her general and conclusory allegations that the *reason* she received these adverse employment actions was because she complained about being on third shift or transcribing or otherwise engaged in activity protected by Title VII., other than her own unsubstantiated speculation. Plaintiff cannot defeat a properly supported motion for summary judgment with unsupported speculation or allegations of discrimination or retaliation; <u>Ross</u>, 759 F.2d at 365; <u>Felty v. Graves-Humphreys, Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987); nor may she "create a genuine issue of fact through mere speculation or the building of one inference upon another." <u>Beale</u>, 769 F.2d at 214. Plaintiff's own self-interested statements as to what she believed or perceived are not sufficient evidence to maintain this claim. <u>McNairn v. Sullivan</u>, 929 F.2d 974 (4th Cir. 1991); <u>Smith v. Flax</u>, 618 F.2d 1062, 1067 (4th Cir. 1980); <u>Komel v. Jewel Cos.</u>, 874 F.2d 472, 475 (7th Cir. 1989); <u>Williams</u>, 871 F.2d at 456 (citing <u>Gairola.</u>, 753 F.2d at 1288); <u>United Black Fire Fighters of Norfolk v. Hirst</u>, 604 F.2d 844 (4th Cir. 1979). <u>See</u> Rule 56, Fed.R.Civ.P.; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Felty</u>, 818 F.2d 1129-1130; <u>Gairola</u>, 753 F.2d at 1288, n.4.

Therefore, Plaintiff's Title VII retaliation claim is without merit and should be dismissed.

## IV.

### SCHAL Claim.

With regard to Plaintiff's South Carolina Human Affairs Law claim, this claim is



evaluated under the same standards as are used for evaluating Plaintiff's claims under Title VII. See Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C.1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.] Therefore, the analysis set forth herein with respect to Plaintiff's claims under Title VII, supra, also applies to any claims Plaintiff has asserted under the South Carolina Human Affairs Law, and this claim should therefore be dismissed.

## V.

### Public Policy Claim.

Finally, in her response to the motion for summary judgment, Plaintiff appears to argue that she was wrongfully discharged in violation of a clear mandate of public policy of the State of South Carolina. While it does not appear that Plaintiff asserted any such claim in her complaint, out of an abundance of caution the undersigned has addressed this claim on the merits.

Plaintiff's wrongful discharge/public policy cause of action (to the extent one has been asserted) should be dismissed because this claim is based on the same allegations which support her claims arising under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and also because Plaintiff has failed to allege that the cited conduct constituted a crime and/or that the Defendant required her to commit a crime. In Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee[21] constitutes a violation of

---

[21]Plaintiff does not contest that she was an at-will employee.



a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". <u>Id</u>, at 216. <u>See</u> <u>also</u>; <u>Culler v. Blue Ridge Electric Cooperative, Inc.</u>, 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; <u>Barron v. Labor Finders of South Carolina</u>, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009); although some other situations may also apply. <u>See Washington v. Purdue Farms, Inc.</u>, No. 07-3552, 2009 WL 386926 at * 12 (D.S.C. Feb. 13, 2009)["Several types of public policies have been deemed appropriate to sustain this cause of action including: requiring an employee to violate the criminal law, where the reason for the employee's termination was itself a violation of criminal law, obeying a subpoena, refusing to contribute money to a political action fund, and invoking rights under Payment of Wages Act."] .

        Plaintiff has failed to identify any public policy violation with respect to this claim. Rather, Plaintiff argues that it was a violation for the Defendant to terminate her based on her claims of discrimination. <u>Plaintiff's Brief</u>, pp. 14-15. Even assuming the Defendant did deny Plaintiff her rights under Title VII or § 1981, however, that is not the commission of a crime, nor is there any allegation that the Defendant required Plaintiff to violate a public policy. <u>Lawson v. South Carolina Dept. of Corrections</u>, 532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a criminal law"]; <u>Eady v. Veolia Transp. Services, Inc.</u>, 609 F.Supp.2d 540, 559 (D.S.C. 2009)[Plaintiff failed to show violation of public policy where he claimed that he was terminated for refusing to sign a blank affidavit]; <u>King v. Charleston County School District</u>, ____ F.Supp.2d ____, 2009 WL 3397598 at * 11 (D.S.C. May 21, 2009); <u>Love v. Cherokee County Veteran's Affairs Office</u>, 2009 WL 2394369, at * 3 (D.S.C. Jul. 31, 2009)[Granting



Rule 12 motion to dismiss where no inference could be drawn from the facts alleged that the Plaintiff's termination was in violation of a criminal law]; Barron v. Labor Finders of S.C., 2009 WL 1520820, at * 3 (S.C.Ct. App. May 29, 2009)[No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]; Washington, 2009 WL 386926 [Dismissing public policy claim where employer purportedly denied employee's request for FMLA leave, which neither violated a criminal law nor required the employee to do so]; Merck v. Advanced Drainage System, Inc., 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Hence, while Plaintiff alleges she was wrongfully discharged, it was not because of the violation of any clearly mandated "public policy" as defined by the South Carolina Courts, but because of an alleged violation of her personal rights. The public policy exception for the discharge of an at-will employee encompasses only "public rights", not "private" rights, and Plaintiff has therefore failed to set forth a valid claim for wrongful discharge in violation of the public policy of South Carolina. See Weinberger v. MCI Telecommunications, Inc., No. 92-2550, 1994 WL 18081 at * 3 (4th Cir. Jan. 25, 1994) ["The public policy exception encompasses only public rights granted by existing law, not private rights."].

In any event, the South Carolina Supreme Court has explicitly held that "[w]hen a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006) (citing Lawson, 532 S.E.2d 259); Washington, 2009 WL 386926 at * 12 n. 12. Here, Plaintiff seeks a remedy for wrongful termination under Title VII, § 1981, and SCHAL, and as Plaintiff has a statutory remedy for her termination claim, she may not pursue a separate state law wrongful termination cause of action. Palmer, 2006

33



WL 2708278, at * * 3 and 5; <u>Heyward v. Monroe</u>, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998)[Finding that Plaintiff's public policy termination claim was appropriately dismissed: "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"]; <u>Zeigler v. Guidant Corp</u>., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The <u>Ludwick</u> exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."] (quoting <u>Stiles v. American General Life Ins. Co.</u>, 516 S.E.2d 449, 452 (S.C. 1999)); <u>Dockins v. Ingles Markets, Inc</u>., 413 S.E.2d 18, 19 (S.C. 1992); <u>Epps v. Clarendon County</u>, 405 S.E.2d 386, 387 (S.C. 1991).

Therefore, the Defendant is entitled to dismissal of Plaintiff's claim for wrongful discharge, assuming such a claim has properly been asserted in this case.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

December 8, 2009
Charleston, South Carolina



34

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

